# United States Court of Appeals
## For the First Circuit

No. 05-1493

JAMES R. MUIRHEAD,
Plaintiff, Appellant,

v.

L. RALPH MECHAM, DIRECTOR,
ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Ronald R. Lagueux,* Senior U.S. District Judge]

Before

Selya and Lynch, Circuit Judges,
and Restani,** Judge.

Peter D. Anderson, with whom McLane, Graf, Raulerson & Middleton, P.A. was on brief, for appellant.

Catherine Y. Hancock, Attorney, Appellate Staff, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, Thomas P. Colantuono, United States Attorney, and Michael S. Raab, Attorney, Appellate Staff, were on brief, for appellee.

October 20, 2005

*Of the District of Rhode Island, sitting by designation.
**Chief Judge of the United States Court of International Trade, sitting by designation.

**SELYA, <u>Circuit Judge</u>.** This case stems from a statutory interpretation by the Director of the Administrative Office of the United States Courts (the Director) that resulted in the exclusion of a magistrate judge from the Judicial Survivors' Annuities System (JSAS). The judge challenged the correctness of the Director's interpretation in the United States District Court for the District of New Hampshire. After determining that it had jurisdiction to adjudicate the matter, the district court upheld the Director's interpretation and dismissed the action for failure to state a claim. <u>See</u> Fed. R. Civ. P. 12(b)(6). We conclude that the Director's actions were the acts of the sovereign and, therefore, immune from scrutiny in the district court. Consequently, we vacate the dismissal of the complaint and remand for the entry of an order of dismissal, without prejudice, for want of subject-matter jurisdiction.

The facts are not in dispute. Plaintiff-appellant James R. Muirhead is a United States Magistrate Judge in and for the District of New Hampshire. The district court initially appointed him to an eight-year term beginning September 1, 1995. In recognition of his meritorious service, the court named him to a second eight-year term beginning September 1, 2003. He continued his tenure as a magistrate judge without any break in service.

When Congress first enacted the JSAS, only Article III judges were eligible to participate. Congress later amended the

statute to extend eligibility to bankruptcy and magistrate judges. See Retirement and Survivors' Annuities for Bankruptcy Judges and Magistrates Act of 1988, Pub. L. No. 100-659, 102 Stat. 3910 (codified at 28 U.S.C. § 376(a)(1)(F)). The JSAS pays an annuity to surviving spouses and dependent children of enrolled judges. 28 U.S.C. § 376(h). The amount of the annuity is based on factors such as the participant's salary, years of creditable service, and years of contribution to the JSAS. Id. § 376(l). Participant contributions, in the form of payroll deductions and payments to cover prior creditable service, fund roughly fifty percent of the JSAS and government contributions fund the remainder. See id. § 376(b)-(d), (w).

Participation in the JSAS is voluntary. See id. § 376(a)(1). The statutory scheme contains a number of contingencies covering enrollment. The contingency at issue here stipulates that, in order to enroll in the JSAS, a judge must furnish written notice to the Director of his or her intention to do so "within six months after . . . the date upon which he or she takes office." Id. (emphasis supplied). The controversy between the parties centers on the meaning of the phrase "takes office."

The appellant did not elect to enroll in the JSAS at the inception of his initial term as a magistrate judge. On December 18, 2003, roughly three months after his reappointment, the appellant gave the Director written notice of his intent to enter

the program. The Director rejected the appellant's attempted election as untimely; although the appellant gave notice within six months of the start of his second term, the Director determined that "a magistrate judge does not have a new opportunity to elect JSAS upon reappointment to that same office." In other words, the Director interpreted the statutory phrase "takes office" to apply solely to original appointments.

The appellant did not take this rejection lightly. He filed suit in the district court seeking a declaratory judgment that his election was effective and a writ of mandamus to compel the Director to accept it. He maintained that a magistrate judge "takes office" anew whenever he or she is reappointed to an additional eight-year term. This interpretation would grant a magistrate judge a six-month window to elect into the JSAS not only after his or her initial appointment but also after each successive reappointment. That would mean, then, that the appellant's election was timely and the Director had no discretion to reject it.

The Director moved to dismiss the action on two grounds. First, he contended that principles of sovereign immunity barred the maintenance of the appellant's claim. Second, he contended that, even if the district court was competent to act, the complaint failed to state a claim upon which relief could be granted because the Director had correctly construed the statutory

term "takes office." The district court rejected the sovereign immunity defense out of hand, but concluded that, under the JSAS statute, a magistrate judge only "takes office" upon his or her initial appointment. On that basis, the court granted the Director's motion to dismiss.

On appeal, both parties make compelling arguments in support of their competing interpretations of the JSAS statute. Intriguing as this definitional conundrum may be, the better practice is to confirm the existence of subject-matter jurisdiction before proceeding to the merits. See, e.g., Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005). We follow that course.

The Director posits that the district court lacked jurisdiction over the action because the appellant's claim was barred by sovereign immunity. This proposition requires us to determine whether the Director's refusal to accept the appellant's election should be considered an act of the sovereign or, conversely, an act taken outside the bounds of the Director's authority (and, thus, outside the safe haven of sovereign immunity protection).

It is beyond cavil that, as the sovereign, the United States is immune from suit without its consent. See United States v. Thompson, 98 U.S. 486, 489 (1878); Bolduc, 402 F.3d at 55. That consent usually takes the form of an express waiver of its sovereign immunity. Such a waiver "cannot be implied but must be

unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Even then, the waiver must be strictly construed. See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983); see also United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994). In the absence of an applicable waiver, courts lack jurisdiction to entertain claims against the United States. United States v. Sherwood, 312 U.S. 584, 586 (1941).

The appellant contends that the district court had jurisdiction over the asserted claim because the United States has expressly waived its immunity through Congress's enactment of the federal mandamus statute, 28 U.S.C. § 1361.[1] This argument misconstrues the nature and purpose of the mandamus statute.

The mandamus statute provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Id. Because the mandamus statute applies only to officers and employees of the United States, rather than to the United States itself, the statute

---

[1]Although the instant action is also premised on the Declaratory Judgment Act, 28 U.S.C. § 2201, that statute plainly does not operate as an express waiver of sovereign immunity. See Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996) (recognizing that the Declaratory Judgment Act does not effect a waiver of sovereign immunity because it "neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief" (citation and internal quotation marks omitted)).

does not create any new cause of action against the government. It simply gives the courts jurisdiction in those instances in which substantive law already provides a remedy. Accordingly, the provisions of the mandamus statute do not waive the sovereign immunity of the United States. Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989); Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980).

Nor does the sovereign immunity waiver included in the Administrative Procedure Act, 5 U.S.C. § 701, pertain here. This waiver only applies to actions of an agency or its officers. The statute, in turn, defines "agency" in a way that excludes the "courts of the United States." Id. § 701(b)(1)(B). The Administrative Office of the United States Courts is a part of the judicial branch, so the Director's actions are not subject to judicial review under the terms of this waiver.

These holdings do not end our odyssey. Although the government enjoys broad protection through the operation of the sovereign immunity doctrine, that doctrine does not necessarily shield federal officers to the same extent. See, e.g., Sloan Shipyards Corp. v. U.S. Shipping Bd. Emerg. Fleet Corp., 258 U.S. 549, 567 (1922) (finding that, although government officers may act as instrumentalities of the government, a government agent, "because he is an agent, does not cease to be answerable for his acts"); Coggeshall Dev., 884 F.2d at 3 (noting that certain suits

against individual government officers "will not be considered against the United States, and thus will not be barred by sovereign immunity"). Where, as here, a plaintiff brings suit against a federal employee rather than against the government itself, an inquiring court must analyze the claim to ascertain whether, despite the nomenclature, the suit is, in reality, a suit against the United States. See Mine Safety Appliance Co. v. Forrestal, 326 U.S. 371, 375 (1945).

This is a unitary test, but both the conduct challenged and the relief sought may have a bearing on its outcome. As for conduct, "if the [challenged] actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign" and come under the protective umbrella of sovereign immunity. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 695 (1949). As for relief, a suit, although nominally aimed at an official, will be considered one against the sovereign "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Dugan v. Rank, 372 U.S. 609, 620 (1963) (citations omitted). When a plaintiff seeks specific performance, the answer to the inquiry about relief hinges on whether the redress obtained against the officer will, in practical

effect, be obtained through the sovereign. Larson, 337 U.S. at 688.

Here, the appellant seeks a declaratory judgment and a writ of mandamus against the Director in the latter's official capacity. He contends that his election was timely, that the Director therefore had no right to reject it, and that the suit against the Director avoids the sovereign immunity bar under the reasoning of Larson.

The Larson Court described two situations in which the acts of a government official would not enjoy the prophylaxis of sovereign immunity. Id. at 689-90. Both situations envision a plaintiff who, like the appellant, seeks to have a government official conform his conduct to federal law. See id.; see also Kozera v. Spirito, 723 F.2d 1003, 1008 (1st Cir. 1983) (discussing the Larson exceptions).

First, "where an officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." Larson, 337 U.S. at 689. The Larson Court reasoned that when the officer is not carrying out the sovereign's will, it does not insult the sovereign's authority if a court metes out equitable relief. Id. Second, an officer's acts are not protected if the statute that confers the power to act is unconstitutional or if the officer exercises that power in an unconstitutional manner. See id. at 690; see also Dugan, 372 U.S.

at 621-22. Again, the justification for granting relief is the notion that the officer is not cloaked with legitimate sovereign power when he acts – "the power has been conferred in form but the grant is lacking in substance because of its constitutional invalidity." Larson, 337 U.S. at 690. Relief in the nature of specific performance is appropriate so long as a government official is sued and either of the two Larson exceptions is implicated. Am. Policyholders Ins. Co. v. Nyacol Prods., Inc., 989 F.2d 1256, 1265 (1st Cir. 1993).

The appellant advances no argument regarding the constitutionality of either the statutory scheme or the Director's decision to exclude him from the JSAS.[2] Instead, he hinges his argument on the first Larson exception: he asseverates that the phrase "takes office" refers to reappointments as well as to original appointments and that, therefore, the Director was compelled, under the terms of the JSAS statute, to accept his election. In his view, the Director's action in refusing to accept

---

[2]In view of this fact, the appellant's reliance on Tashima v. Admin. Office of U.S. Courts, 719 F. Supp. 881 (C.D. Cal. 1989), is misplaced. The decision in Tashima was based on a finding that, although the Director had the authority to make the type of decision at issue, he exercised that authority "in a manner infringing constitutional limits." Id. at 887. Looking to the second Larson exception, the court held that the Director did not enjoy sovereign immunity in that particular instance. Id. Given the absence of any allegation of unconstitutionality in this case, the court's holding in Tashima is of no utility here.

the election was "ultra vires his authority and therefore may be made the object of specific relief." Larson, 337 U.S. at 689.

This argument misapprehends the reach of the first Larson exception. While that exception demands that government officials adhere to Congress's general game plan as they carry out their duties, it does not demand that they play a perfect game. Once Congress decides to delegate certain powers and duties to an official and does not expressly limit that authority, the official is afforded a margin of error in carrying out that general mandate. As Larson itself teaches, a mere claim that an official has erred in the exercise of a delegated power is not enough to bring the action out from behind the protective shield of sovereign immunity. Id. at 695. Put another way, an official's actions within the sphere of his or her delegated authority are not stripped of immunity even if those actions are based on an incorrect reading of the law or a mistaken assessment of the facts. Id. What counts is that "the officer making the decision was empowered to do so." Id.; see also Kennedy v. Rabinowitz, 318 F.2d 181, 183 n.9 (D.C. Cir. 1963) (refusing to hear a claim against the Attorney General on sovereign immunity grounds because "[a]t most, appellees' claim is that appellant has erred, or will err, in construing the law" as he exercised valid delegated power), aff'd on other grounds, 376 U.S. 605 (1964). When an officer acts erroneously, yet still within the scope of his statutory power, the error is rightly

attributed to the sovereign, not the individual, and sovereign immunity bars judicial scrutiny unless there has been an explicit waiver of that immunity. Doehla Greeting Cards, Inc. v. Summerfield, 227 F.2d 44, 47 (D.C. Cir. 1955).

The question, then, is not whether the Director made a mistake in construing the term "takes office," but, rather, whether the Director's action, even if legally erroneous, was beyond the scope of his statutory authority. We conclude that it was not.

Congress explicitly gave the Director the general power to "[r]egulate and pay annuities" to certain heirs of qualifying judicial officers. 28 U.S.C. § 604(a)(7). Withal, Congress imposed some express limitations on the Director's ability to exercise that general power. For example, the JSAS, by its terms, restricts the class of potential annuitants to widows, widowers, children, and former spouses of judicial officers. Id. § 376(h), (s)-(t). Thus, if the Director chose to pay out an annuity to, say, a judicial officer's cousin, the Director would be acting outside the scope of his statutory authority and would be subject to suit under the first Larson exception. At the same time, however, the JSAS reserved certain discretionary functions to the Director, giving him explicit authority, for instance, to determine JSAS issues anent dependency and disability. See id. § 376(i)(1).

While the statute is explicit in granting or denying the Director the authority to make determinations in some instances, it

does not clearly articulate whether the Director has the authority to exercise discretion at every potential decision point. When the question of authority to act is unclear because there has been no express limitation of that authority, Larson gives the benefit of the doubt to the government officer.

An integral part of the Director's general mandate to regulate and pay annuities to certain heirs of qualifying judicial officers entails determining which judicial officers qualify to participate in the program. While section 376 provides some guiding parameters relative to that determination, it, like many statutes, contains some ambiguous terms and does not explicitly prescribe the Director's actions in determining whether to accept every attempted election. In those instances in which the statutory language is incomplete or unclear, the Director must continue to administer the program in the manner that he believes best comports with Congress's intent and the guidelines embedded in the statutory scheme.

The phrase "takes office" falls within one such open area. The district court's careful analysis and the parties' cogent arguments persuasively suggest that the statute is less than pellucid as to whether the Director, in dealing with judicial officers who are appointed for fixed terms (i.e., magistrate judges and bankruptcy judges) should admit only newly appointed judges or should allow reappointed judges a second chance to opt into the

system. There is room for debate — and this room precludes a finding that the Director is expressly prohibited from rejecting elections of reappointed judges. It follows inexorably that the Director was authorized to determine the timeliness of the appellant's attempted election. Consequently, the first Larson exception does not apply.

In sum, the Director's rejection of the appellant's election, if an error at all, was an error of law in the performance of a function of the sovereign. Since the appellant has pointed to no valid waiver of sovereign immunity applicable thereto, the district court was without jurisdiction to determine whether, as a matter of law, the Director's decision was correct. See Larson, 337 U.S. at 695 (concluding that sovereign immunity bars suits challenging a government official's decision, even if that decision was "based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so").

We need go no further. In accordance with the foregoing, we vacate the dismissal of the action on the merits and remand for the entry of an order dismissing the action, without prejudice, for want of subject-matter jurisdiction.[3]

**So Ordered.**

---

[3]The appellant has not sought monetary relief under either the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, id. § 1346(a)(2), so it is unnecessary for us to consider whether a suit could be brought against the government under one of these statutes and, thus, surmount the sovereign immunity barrier.